**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| PMC PROPERTY GROUP, INC.; 200 NORTH 16TH STREET ASSOCIATES, LP, f/k/a PMC/16TH AND RACE STREET ASSOCIATES, LP; 60 NORTH 23RD STREET ASSOCIATES, LP, f/k/a 2301 JFK OWNER LP; and 30 NORTH 23RD STREET ASSOCIATES, LLC, f/k/a 23RD STREET LOT B OWNER, LLC, | CIVIL ACTION |
| Plaintiffs, | Case No. |
| v. | |
| APOGEE ENTERPRISES, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Plaintiffs PMC Property Group, Inc. ("PMC Property Group"), 200 North 16th Street Associates, LP, f/k/a PMC/16th and Race Street Associates, LP ("Franklin Tower Owner"), 60 North 23rd Street Associates, LP, f/k/a 2301 JFK Owner LP ("Riverwalk Tower I Owner"), and 30 North 23rd Street Associates, LLC f/k/a 23rd Street Lot B Owner, LLC ("Riverwalk Tower II Owner" and together with Riverwalk Tower I Owner, the "Riverwalk Owners") (collectively, "PMC" or "Plaintiffs") file this Complaint against Defendant Apogee Enterprises, Inc. ("Apogee") and aver as follows:

## PRELIMINARY STATEMENT

1. Defendant Apogee is leading a coordinated corporate shell game designed to avoid liability for the dangerous defective glass window products that it peddles across the country

through its subsidiaries—sister companies Apogee Wausau Group, Inc. d/b/a Wausau Window and Wall Systems ("Wausau") and Viracon, LLC f/k/a Viracon, Inc. ("Viracon").

2. Under Apogee's direction and control—and at Apogee's profit—Wausau and Viracon design, manufacture, and sell commercial window systems that are spontaneously exploding after being installed due to a defect in the window glass. But when the combustions happen, neither Apogee, Wausau, nor Viracon do anything about it. Instead, Apogee has carefully orchestrated a response from both Wausau and Viracon that involves them both pointing fingers at each other in an attempt to avoid any collective responsibility (which would financially fall on Apogee).

3. But Apogee's strategy is legally baseless because the three companies are alter-egos, using the corporate form as a sham. Beyond Apogee's direction, control, and profit over Wausau's and Viracon's conduct, upon information and belief, the three companies also intermingle assets and do not abide by corporate formalities. As such, Apogee cannot and should not be permitted to hide behind the corporate veil for this misconduct.

4. Plaintiffs come to this Court as victims of Apogee's corporate shell game seeking declaratory relief for corporate veil-piercing and unjust enrichment claims against Apogee.

5. Plaintiff PMC Property Group is a Philadelphia-based real estate development company focusing on new construction, renovation, and conversion of commercial buildings into modern residential apartments and commercial spaces. With more than 80 rental properties in downtown Philadelphia alone, PMC and its affiliates have been key drivers of construction jobs and population growth in downtown Philadelphia over the past several decades. The completed projects typically contain commercial spaces where local businesses thrive and upscale residential apartments for families and working professionals.

6. One such project is Riverwalk, a two-tower mixed-use project located on the west side of 23rd and Arch Streets in Center City Philadelphia. PMC Property Group and the Riverwalk Owners developed Riverwalk on one of the last remaining parcels available for development along the Schuylkill River waterfront.

7. Another PMC project in Center City is Franklin Tower. Formerly the headquarters of GlaxoSmithKline until 2012, PMC Property Group and Franklin Tower Owner renovated the building to offer apartments and retail space.

8. PMC contracted with Apogee's subsidiary Wausau to design, engineer, fabricate, and supply window systems for three modern, glass-skinned residential towers in Center City Philadelphia: Franklin Tower, Riverwalk Tower I, and Riverwalk Tower II (together, the "Properties"). The window systems make up nearly the entire exterior of each building.

9. PMC paid Wausau approximately fifty million dollars ($50,000,000) for these systems—an enormous outlay for a critical piece of all three projects.

10. Apogee's other subsidiary Viracon (i.e., Wausau's sister company), manufactured the insulating glass units ("IGUs"), that is, the actual glass panels or windows, that Wausau used in the window systems supplied to PMC. In other words, Wausau manufactured and supplied the window systems, and Viracon manufactured the windows in that system.

11. The glass that Viracon manufactured is now spontaneously shattering—without warning, without external cause—in dozens of apartments and on the exterior and interiors of all three Properties. The root cause is nickel sulfide contamination, a latent defect that occurs during the glass manufacturing process. Nickel sulfide contamination causes the formation of tiny particles, called "inclusions," within the glass, which later expand in size when the glass is exposed to variation in temperature. That expansion causes the glass to spontaneously break. Viracon is

responsible for this defect in the glass it manufactured and supplied to Wausau, who in turn supplied it to PMC.

12. Since the spontaneous glass breakages began—and with increasing frequency since 2024—PMC has been seeking accountability and remediation from Wausau. But what it has encountered instead is Apogee's carefully orchestrated strategy of deflection by Wausau and Viracon, each claiming not to know where the glass came from—even though it came from them.

13. When PMC first demanded that Wausau honor its express warranties—which warranted against "premature failure of the window [or] glass"—Wausau refused.

14. Wausau disclaimed its own warranty, claiming it does not manufacture the glass or the IGUs and, therefore, cannot be responsible for nickel sulfide inclusions. When PMC asked Wausau to identify who does manufacture the glass, Wausau claimed it had no way of knowing that information. At the same time, it became clear that Apogee's subsidiary Viracon—Wausau's own sister company—manufactured the IGUs. When PMC then pressed Viracon for answers, Viracon similarly claimed it could not "conclusively identify" the source of the glass it used to make the IGUs. Moreover, as it turns out, PMC's warranty demands ultimately went to Apogee, and Apogee ignored each and every one.

15. In other words, among Apogee, Wausau, and Viracon, no one will accept responsibility for the defective glass, and no one will even say where it came from.

16. These related companies have obfuscated responsibility to such an extent that there are now different lawsuits in different courts against each company. The claims against Wausau are pending in the Pennsylvania Court of Common Pleas in Philadelphia County (the "State

Action").[1] When plaintiffs attempted to join Viracon in that suit, Wausau resisted and forced a separate suit against Viracon in that court, and then removed the action to the United States District Court for the Eastern District of Pennsylvania where those claims remain pending (the "Pennsylvania Federal Action").[2] And when plaintiffs attempted to join Apogee in that federal suit, Apogee resisted and successfully obtained dismissal without prejudice on personal jurisdiction grounds, requiring that plaintiffs now bring the present veil-piercing suit against Apogee in this Court. Apogee's, Wausau's, and Viracon's corporate shell game, designed to avoid legal responsibility, has unnecessarily burdened multiple courts' time and resources, and it should be countenanced no further.

17. These affiliated entities should be held responsible. Since the beginning of 2024, the number and frequency of spontaneous glass breakages in the three towers has increased, prompting scrutiny by the Philadelphia Department of Licenses and Inspections ("L&I")—including inspections, issuance of violations, and penalties—and causing negative media attention, including a Fox 29 news segment and a July 17, 2024 story by *The Philadelphia Inquirer*, among others.

18. Despite PMC's repeated requests for the Apogee, Wausau, and Viracon to honor their Warranties, they have refused and ignored the situation.

19. Because of this refusal, PMC has had no choice but to take remedial efforts, including the engagement of outside experts, engineers and consultants; implementing emergency inspection and response protocols; and erecting scaffolding across several city blocks.

---

[1] *PMC Property Group, Inc. et al. v. Apogee Wausau Group, Inc., d/b/a Wausau Window and Wall Systems*, No. 240103026 (Pa. C.C.P. Phila. Cty.).

[2] *PMC Property Group, Inc. et al. v. Viracon, LLC f/k/a Viracon, Inc. et al.*, No. 2:26-cv-03345-AMP (E.D. Pa.).

20. To date, PMC has incurred substantial costs to inspect, clean, and replace broken glass at Riverwalk and Franklin Tower, and for the other remedial efforts detailed above.

21. The existence and continuation of spontaneous glass breakage subjects PMC to substantial additional direct costs for window replacement and other significant damages.

22. For purposes of this action, Apogee has been unjustly enriched, and is jointly and severally responsible for paying all monetary damages that PMC has sustained and are continuing to sustain, until Apogee, Wausau, and/or Viracon properly address the glass defects, for the reasons stated below.

**THE PARTIES**

23. Plaintiff PMC Property Group is a Pennsylvania corporation with its principal place of business located at 1608 Walnut Street, Suite 1400, Philadelphia, Pennsylvania 19103.

24. Plaintiff Franklin Tower Owner is a Pennsylvania limited partnership with a principal place of business located at 1608 Walnut Street, Suite 1400, Philadelphia, Pennsylvania 19103. Franklin Tower Owner's partners are (a) 200 North 16 Street Holdings, LP and (b) PMC/16th and Race Streets Associates General Partner, LLC, whose partners and/or members are, in turn, citizens of Pennsylvania and none of whom are citizens of Minnesota or Wisconsin. Franklin Tower Owner owns the real property and improvements located at 200 N. 16th Street in Philadelphia, now known as The Residences at Franklin Tower ("Franklin Tower").

25. Plaintiff Riverwalk Tower I Owner is a Delaware limited partnership, with a principal place of business located at 1608 Walnut Street, Suite 1400, Philadelphia, Pennsylvania 19103. Riverwalk Tower I Owner's partners are (a) 2301 JFK Holdings LP and (b) 2301 JFK Owner General Partner, whose partners are, in turn, citizens of Pennsylvania and none of whom are citizens of Minnesota or Wisconsin. Riverwalk Tower I Owner owns the real property and

improvements located at 60 N. 23rd Street in Philadelphia ("Riverwalk Tower I"). Riverwalk Tower I was sometimes referred to by PMC and Wausau in their dealings as "Building E" and/or "Premise E."

26. Plaintiff Riverwalk Tower II Owner is a Pennsylvania limited liability company with its principal place of business located at 1608 Walnut Street, Suite 1400, Philadelphia, Pennsylvania 19103. 30 North 23rd Street Associates, LLC is the current record title holder of Riverwalk Tower II. At the time when PMC entered into a contract with Wausau relating to Riverwalk Tower II, on or around April 23, 2020, 30 North 23rd Street Associates, LLC was known as 23rd Street Lot B Owner, LLC. 23rd Street Lot B Owner, LLC became 30 North 23rd Street Associates, LLC by name change filed with the Pennsylvania Department of State on April 15, 2021. Riverwalk Tower II Owner's member is 2301 JFK Holdings III LP, whose partners are, in turn, citizens of Pennsylvania and none of whom are citizens of Minnesota or Wisconsin. Riverwalk Tower II Owner owns the real property and improvements located at 30 N. 23rd Street in Philadelphia ("Riverwalk Tower II")[3]. Riverwalk Tower II was sometimes referred to by PMC and Wausau in their dealings as "Building D" and/or "Premise D."

27. Defendant Apogee is a Minnesota corporation with its principal place of business located at 4400 West 78th Street, Suite 520, Minneapolis, Minnesota 55435.

[3] Riverwalk Towers I and II (together, "Riverwalk") are modern glass-skinned residential towers and include, among other things, one- and two-bedroom luxury apartments and retail spaces.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332, because there is complete diversity among the parties, and the amount in controversy exceeds $75,000.

29. This Court has personal jurisdiction over Defendant because Apogee is a Minnesota corporation at home in Minnesota and has its principle place of business in Minneapolis, Minnesota.

30. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and is a resident of the state in which this district is located.

## FACTUAL BACKGROUND

31. PMC, in different capacities, contracted with Apogee's subsidiary Wausau, a Wisconsin company, to design, engineer, fabricate, and supply window systems for Riverwalk and Franklin Tower, respectively. Riverwalk and Franklin Tower are modern, glass-skinned towers, and the window systems make up nearly the entire exterior of each of the three towers.

### A. PMC's Contract with Wausau for Riverwalk and Franklin Tower.

32. PMC served as the agent and contractor for the construction and/or renovation of Riverwalk and Franklin Tower.

33. The Riverwalk Owners and Franklin Tower Owner, by and through PMC Property Group, contracted with Wausau to design, engineer, fabricate, and supply windows and window systems for each of the three properties.

#### 1. The Franklin Tower Contract.

34. In connection with the renovation of Franklin Tower, PMC executed a "Quote Confirmation" with Wausau ("Franklin Quote") on or around November 4, 2015. PMC is not in

possession of a copy of the Franklin Quote, but avers that Wausau possesses true and correct copies of the final document or documents executed by the parties constituting the Franklin Quote.

35. Under the Franklin Quote, Wausau agreed to design, engineer and supply window systems and other materials for the Franklin Tower project for a substantial base price.

36. In connection with the Franklin Quote, Wausau issued a standard limited Warranty and a special limited Warranty for the windows and window system supplied for Franklin Tower ("Franklin Warranty"). A true and correct copy of the Franklin Warranty is attached hereto as **Exhibit 1**.

**2. The Riverwalk Tower I Contract.**

37. On or about May 17, 2019, PMC executed a "Quote Confirmation" with Wausau ("Tower I Quote"). A true and correct copy of the Tower I Quote is attached hereto as **Exhibit 2**.

38. Under the Tower I Quote, Wausau agreed to design, engineer and supply thousands of window system panels and other materials for the Riverwalk Tower I project for a base price of $16,627,115.00.

39. In connection with the Tower I Quote, Wausau issued a standard limited Warranty and special limited Warranty for the windows and window system supplied for Riverwalk Tower I ("Tower I Warranty"). PMC does not possess a copy of the Tower I Warranty. But, upon information and belief, the terms of the Tower I Warranty are virtually identical to the terms in the Franklin Warranty.

**3. The Riverwalk Tower II Contract.**

40. On or about April 23, 2020, PMC executed another "Quote Confirmation" with Wausau ("Tower II Quote"). A true and correct copy of the Tower II Quote is attached hereto as **Exhibit 3**.

41. Under the Tower II Quote, Wausau agreed to design, engineer and supply thousands of window system panels and other materials for the Riverwalk Tower II project for a base price of $15,088,807.00.

42. Riverwalk Tower II Owner—together with PMC—and Wausau also entered into an agreement titled "First Amendment and Supplementary Conditions to Quote Confirmation #278652-Rev03 Wausau Window & Wall System, Riverwalk – Building D" made effective April 23, 2023, amending the terms of the Tower II Quote ("First Amendment"). A true and correct copy of the First Amendment is attached hereto as **Exhibit 4**.

43. In connection with the Tower II Quote and First Amendment, Wausau issued a standard limited Warranty and special limited Warranty for the windows and window system supplied for Riverwalk Tower II ("Tower II Warranty," and together with Franklin Warranty and Tower I Warranty, the "Wausau Warranties"). A copy of the Tower II Warranty is attached as "Exhibit B" to the First Amendment. The First Amendment amended certain terms of the Tower II Warranty.

**B. <u>Viracon Manufactures the Defective Insulating Glass Units for Wausau that Wausau Supplied for the Riverwalk and Franklin Towers.</u>**

44. Apogee's subsidiary Viracon (Wausau's sister company) manufactured at least some of the IGUs for Wausau that Wausau used to make the window systems that it supplied to PMC for the Riverwalk and Franklin Towers.

45. Neither Apogee nor Wausau nor Viracon know from where the glass used to manufacture the IGUs was sourced. Neither Apogee nor Wausau nor Viracon know the manufacturer or country of origin of the glass that Viracon used to manufacture the IGUs.

46. Wausau is disclaiming responsibility for the IGUs, claiming it did not manufacture them. Yet PMC has learned that Viracon manufactured at least some of the IGUs. When

confronted with this evidence, Wausau drew a hyper-technical distinction between "insulating glass units" and "glass," insisting that "Viracon manufactures 'insulating glass units,' not glass."

47. When PMC confronted Viracon with this information, Viracon likewise claimed it could not "conclusively identify the source of the glass used to make the IGUs."

48. Finally, PMC has learned that all of its requests for Wausau and Viracon to provide warranty coverage for the broken glass were sent from outside counsel to at least one employee at Apogee, not Wausau or Viracon. Like Wausau and Viracon, Apogee ignored those requests and refused to honor the warranty.

49. This coordinated obfuscation between sister companies sharing the same parent and the same counsel is the hallmark of the shell game that Apogee, Wausau, and Viracon have orchestrated to avoid responsibility.

## C. Apogee Controls Viracon's and Wausau's Business and Financially Benefits from the Insulated Glass Units Supplied by Viracon and Wausau for the Riverwalk and Franklin Towers.

50. Early in the Franklin Tower development process, PMC was considering using a glass manufacturer unrelated to any of the Apogee-family companies.

51. At that time, however, Viracon made clear in email correspondence with Wausau that it was "willing to do almost anything" to get the manufacturing work from that other entity because it would "be a good corporate move" and would benefit Apogee's stockholders.

52. Viracon knew and intended for Apogee to directly benefit and reap the proceeds from the sale of its defective IGUs to PMC.

53. Further, Apogee was directly involved in Viracon's and Wausau's day-to-day business, controlling Viracon's and Wausau's legal affairs, warranty claims, contracting, and production schedules, including for the development projects at issue in this case and the related legal actions.

54. This control is evidenced by, among other things, Apogee's General Counsel having appeared as a client representative on behalf of Wausau in depositions taken in the State Action.

55. Also in the State Action, Wausau's corporate representative, Paul Beckman, took the deposition from Apogee's office.

56. Moreover, PMC has learned that each notice PMC submitted seeking warranty coverage for the defective IGUs was forwarded from outside counsel to at least one employee of Apogee, instead of Wausau or Viracon.

57. As PMC learned, this is simply standard operating procedure for Apogee and its subsidiaries. Indeed, upon information and belief, Apogee made all warranty decisions involving PMC and Viracon, as evidenced by its receipt of PMC's warranty coverage requests and an October 2020 email exchange in which an employee of Wausau contacted an employee of Apogee for approval of a warranty claim that would be "cover[ed]" by Viracon and to "pass" that claim "on to the warranty department for a credit." Apogee approved the warranty credit.

58. With respect to contracting, an email exchange from November 2019 between Wausau employees reveals that Apogee was dictating language concerning glass treatment (that could have mitigated or eliminated nickel sulfide contamination) that was supposed to be included in all of Wausau's quotations, but was not for PMC.

59. Apogee also dictated Viracon's and Wausau's production schedules.

60. By way of example, in a January 2021 email exchange, the Director of Procurement Operations for Apogee emailed Viracon's Director of Sales for "some help on getting glass into Wausau sooner than what is on the PO [purchase order]."

61. Apogee was feeling the pressure and wanted to expedite the production schedule because the purchase orders were "critical to [its] Q4 numbers," which further highlights that Apogee benefitted directly from PMC's purchase of the IGUs.

62. A month before that exchange, in December 2020, Apogee's Director of Procurement Operations became involved in another effort to push up delivery times on products PMC ordered from Wausau. In the email exchange, the Director made clear that PMC was "super unhappy with us [Apogee]," so he wanted everyone to "pull out all the stops" for Apogee to improve the production schedule. Further evidencing the conflation of Apogee and its subsidiaries, Apogee's Director of Procurement simultaneously held an Apogee email address and a Wausau email address and, as exemplified in this email chain and others, both were used.

63. Of course, Apogee's involvement was not only limited to the projects with PMC; it was heavily involved in projects for other customers as well. As one Apogee employee acknowledged in a September 2021 email when attempting to improve production timelines on a non-PMC project, its subsidiaries' production issues "get[] attention throughout the Apogee org."

64. In short, when it comes to key business decisions—language for contracts, warranty claims, and production schedules—it is Apogee that runs the show through its alter egos, Viracon, and Wausau.

65. Apogee's control was not limited to ordinary parent-company monitoring. Apogee personnel made or approved warranty decisions for Viracon and Wausau, dictated contract language used by Wausau, intervened to change production schedules for Viracon and Wausau products, and caused subsidiary personnel to act for Apogee's own financial objectives.

66. Upon information and belief, Apogee, Viracon, and Wausau operated with a single functional identity for purposes of the defective IGUs and window systems supplied to PMC:

Apogee used shared personnel and centralized decision-making to control warranty claims, contracting terms, customer-facing responses, and production priorities, while Viracon and Wausau performed functions that Apogee treated as part of one integrated business segment.

67. In fact, on December 15, 2025, Apogee issued a press release on its website touting that it reversed its "plans to retire [] Wausau" and instead is consolidating Wausau, and certain Wausau sister companies, so customers will interface with "one, unified, experienced Apogee Architectural Metals team." Apogee also states that "Apogee Architectural Metals" is Apogee's "business segment."[4]

**D. Spontaneous Glass Breakage and Defective Windows at Riverwalk and Franklin Tower.**

68. Franklin Tower was completed in 2019, while Riverwalk Towers I and II were completed or substantially completed in or around July 2021, and November 2022, respectively.

69. The façades of all three buildings are nearly entirely glass window systems, supplied by Wausau.

70. The panels of glass that Viracon manufactured and that Wausau furnished in its window and wall systems in Franklin Tower and Riverwalk are defective.

71. The glass has spontaneously broken and continues to break spontaneously.

72. Since 2024, the number and frequency of spontaneous glass breakages have increased.

73. PMC has become aware that Wausau negligently provided defective glass through discovery of the latent defects and the resulting spontaneous glass breakage.

[4] *See* https://apogeearchmetals.com/apogee-architectural-metals-affirms-wausau-windows-as-a-core-brand-in-its-product-portfolio/.

74. This spontaneous glass breakage is believed to be the result of a defect in the manufacture of fully tempered glass caused by nickel sulfide contamination.

75. Nickel sulfide contamination occurs during the glass manufacturing process. This contamination causes the formation of tiny particles, called "inclusions," within the glass, which later expand in size when the glass is exposed to variation in temperature. That expansion causes the glass to spontaneously break without warning. This is a latent defect that manifests throughout the life of the glass, which was imperceptible by PMC at the time of delivery and installation.

76. PMC could not have discovered the nickel sulfide contamination at delivery or installation because the inclusions are latent and imperceptible to the naked eye. PMC did not know, and reasonably could not have known, that the breakages were caused by nickel sulfide contamination attributable to the glass used by Viracon until discovery, investigation, and Apogee's, Wausau's, and Viracon's own shifting explanations revealed the nature and source of the defect.

77. PMC has incurred substantial damages. These damages will continue to accrue until Wausau properly addresses the defects in the glass it provided, as Wausau is required to do under the operative contracts, warranties, and its common law obligations.

78. Because of Apogee's, Wausau's, and Viracon's refusal to do anything to help, PMC has had no choice but to take several remedial efforts, including the engagement of outside experts, such as engineers and consultants, devising an inspection and response protocol, and erecting scaffolding across several city blocks.

79. PMC has incurred substantial costs to inspect, clean, and replace broken windows and glass at Riverwalk and Franklin Tower as well as costs including, but not limited to the costs

of protective scaffolding around the affected buildings, engineers, architects, public relations consultants, and legal fees.

80. PMC's damages are not limited to the cost of replacing the defective IGUs themselves. Broken glass has fallen onto sidewalks, balconies, tenant patios, interiors, and other areas of the properties, creating immediate safety hazards and causing damage and loss beyond the defective glass, including emergency protection, inspection, cleanup, scaffolding, engineering, consultant, public-relations, and L&I-related response costs.

81. PMC expects total expenditures resulting from the spontaneous breakages to be in the millions of dollars.

82. The existence and continuation of spontaneous glass breakage subjects PMC to substantial additional direct costs for window replacement and other significant damages.

**E. <u>This Action is Necessary to Obtain Complete Relief Against Apogee.</u>**

83. The State Action was filed against Wausau only, before PMC had the benefit of discovery and investigation confirming Apogee's role in directing, controlling, approving, and profiting from the conduct at issue and Viracon's role in manufacturing the IGUs.

84. Moreover, discovery in the State Action and subsequent warranty communications revealed that Apogee personnel received and controlled warranty communications and business decisions concerning the same defective products, and that Viracon and Wausau refused to identify the source of the defective glass.

85. The relief sought in this action includes relief against Apogee based on its own conduct and based on its domination and control of Viracon and Wausau. Complete relief for the defective IGUs, the coordinated refusal to honor warranty obligations, and Apogee's use of its

subsidiaries to avoid responsibility cannot be obtained in the State Action or in the Pennsylvania Federal Action.

86. Apogee's liability must therefore be adjudicated here. Indeed, PMC had previously sought to add Apogee as a defendant in the Pennsylvania Federal Action, but Apogee—represented by the same outside counsel—successfully obtained dismissal without prejudice on personal jurisdiction grounds, forcing this separate suit against Apogee.

**COUNT I**
**UNJUST ENRICHMENT**
**(PLAINTIFFS V. APOGEE)**

87. PMC incorporates the preceding allegations herein as if fully set forth at length herein.

88. Apogee has been unjustly enriched at PMC's expense and detriment. Apogee was directly involved in insisting Viracon and Wausau provide the defective IGUs and window systems manufactured by Viracon and Wausau to PMC so that Apogee and its shareholders would receive the profits.

89. As the "mother company," Apogee is being unjustly enriched by retaining the proceeds from PMC from the defective IGUs and window systems supplied by Viracon and Wausau, as evidenced by its instructions to Viracon to improve production times on its PMC purchase orders, because they were "critical" to Apogee's bottom-line "numbers," while failing to ensure that its subsidiaries provided glass that has been heat strengthened or otherwise made safe and not prone to spontaneous breakage.

90. Apogee is being further unjustly enriched by ignoring PMC's multiple requests for aid regarding the remediation and mitigation of the effects of the spontaneous glass breakage. To

date PMC has spent substantial sums of money in efforts to prevent harm to persons or property as a result of the spontaneous breakages.

91. PMC has no remedy at law against Apogee.

92. Allowing Apogee to keep the ill-gotten profits of its illegal conduct would be unjust, unfair, and inequitable.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant Apogee:

a. For actual and direct damages that Plaintiffs are entitled to recover as a result of Apogee's, Wausau's, and Viracon's conduct;

b. For incidental and consequential damages as permitted by law;

c. For interest;

d. For Plaintiffs' attorneys' fees and costs; and

e. For all such relief as this Court deems appropriate.

**COUNT II**
**DECLARATORY JUDGMENT**
**(VIRACON IS APOGEE'S ALTER EGO AND VIRACON'S CORPORATE VEIL CAN BE PIERCED)**
**(PLAINTIFFS V. APOGEE)**

93. PMC incorporates the preceding allegations herein as if fully set forth at length herein.

94. Apogee exercised domination and control over Viracon, including by directing production priorities, using Viracon to advance Apogee's financial objectives, controlling warranty communications and decisions involving Viracon products, and causing Viracon to act as part of an integrated Apogee enterprise rather than a fully separate corporate actor.

95. Apogee used its domination and control over Viracon to further its own financial and personal corporate interests.

96. Apogee substantially intermingled its business interests and financial assets and objectives with Viracon, as evidenced by, among other things, the decision to use Viracon as the manufacturer for IGUs supplied to PMC to benefit Apogee's stockholders, fulfillment of Viracon and Wausau purchase orders being treated as "critical" for Apogee's bottom line, and Apogee personnel intervening directly in Viracon's production timing.

97. Apogee disregarded corporate separateness and formalities with respect to Viracon, as evidenced by, among other things, its involvement in the manufacturing and production process, its direction of the schedule for IGUs supplied to PMC to be used in the Franklin and Riverwalk Towers to benefit Apogee's stockholders, its receipt and handling of warranty claims concerning Viracon products—integrated into the Wausau windows sold to PMC—and its use of Viracon as a component of Apogee's integrated architectural-products business.

98. Apogee used the legal fiction of Viracon to perpetuate an injustice on PMC and to prevent PMC from recovering for the defective IGUs, as evidenced by, among other things, Viracon's refusal to identify the source of the glass supplied to PMC, Apogee's receipt and handling of PMC's warranty claims, and the coordinated refusal by Apogee, Viracon, and Wausau to accept responsibility for the defective products.

99. Justice requires that the legal fiction that Viracon is distinct from Apogee be disregarded.

100. Disregarding the legal fiction that Viracon is distinct from Apogee will not prejudice any innocent parties.

101. Injustice will result if the legal fiction that Viracon is distinct from Apogee is maintained despite the unity of interests among Viracon, Wausau, and Apogee, because Apogee

used that structure to direct and profit from the defective products while leaving PMC without complete relief against the entity that controlled the relevant conduct.

102. Pursuant to 28 U.S.C. §§ 2201-2202, this Court has the power in a case of actual controversy within its jurisdiction to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

103. PMC and Apogee have an actual controversy regarding whether Apogee exercised domination and control such that PMC can pierce Viracon's corporate veil.

104. PMC and Apogee have an actual controversy regarding whether, because PMC can pierce Viracon's corporate veil, PMC can enforce any judgment against Apogee that it obtains against Viracon in the Pennsylvania Federal Action.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant Apogee:

a. For a declaration that Viracon is the alter ego of Apogee;

b. For a declaration that Viracon's corporate veil can be pierced in order to hold Apogee responsible for Viracon's obligations;

c. For a declaration that because Viracon is the alter ego of Apogee, Plaintiffs can enforce any judgment against Viracon against Apogee;

d. For a declaration that Apogee must pay any incidental and consequential damages as permitted by law;

e. For a declaration that Apogee must pay any interest;

f. For Plaintiffs' attorneys' fees and costs; and

g. For all such relief as this Court deems appropriate.

**COUNT III**
**DECLARATORY JUDGMENT**
**(WAUSAU IS APOGEE'S ALTER EGO AND WAUSAU'S CORPORATE VEIL CAN BE PIERCED)**
**(PLAINTIFFS V. APOGEE)**

105. PMC incorporates the preceding allegations herein as if fully set forth at length herein.

106. All persons or entities that have or claim any interest that would be affected by the declaration have been made parties to this action, and the declaration sought by PMC will not prejudice the rights of any persons or entities that are not parties to this action.

107. Apogee exercised domination and control over Wausau, including by directing contract language, controlling or approving warranty decisions, controlling legal and customer-facing responses, intervening in production timing for Wausau-supplied products, and using Wausau as part of an integrated Apogee enterprise rather than a fully separate corporate actor.

108. Apogee used its domination and control over Wausau to further its own financial and personal corporate interests.

109. Apogee substantially intermingled its business interests and financial assets and objectives with Wausau, as evidenced by, among other things, Wausau's use of Viracon as the manufacturer for the IGUs supplied to PMC to be used in the Franklin and Riverwalk Towers to benefit Apogee's stockholders, Apogee's treatment of Viracon and Wausau purchase orders as "critical" to Apogee's bottom line, and Apogee personnel intervening directly in Wausau-related production and warranty matters.

110. Apogee disregarded corporate separateness and formalities with respect to Wausau, as evidenced by, among other things, its involvement in the manufacturing and production process, its direction of the schedule for IGUs and window systems to be used in the Franklin and Riverwalk

Towers, its control over warranty decisions involving Wausau, and its use of Wausau as a component of Apogee's integrated architectural-products business.

111. Apogee used the legal fiction of Wausau to perpetuate an injustice on PMC and to prevent PMC from recovering against Wausau, as evidenced by, among other things, Wausau's refusal to identify the source of the glass supplied to PMC, Apogee's receipt and handling of PMC's warranty claims, and the coordinated refusal by Apogee, Viracon, and Wausau to accept responsibility for the defective products.

112. Justice requires that the legal fiction that Wausau is distinct from Apogee be disregarded.

113. Disregarding the legal fiction that Wausau is distinct from Apogee will not prejudice any innocent parties.

114. Injustice will result if the legal fiction that Wausau is distinct from Apogee is maintained despite the unity of interests among Viracon, Wausau, and Apogee, because Apogee used that structure to direct and profit from the defective products while leaving PMC without complete relief against the entity that controlled the relevant conduct.

115. Pursuant to 28 U.S.C. §§ 2201-2202, this Court has the power in a case of actual controversy within its jurisdiction to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

116. PMC and Apogee have an actual controversy regarding whether Apogee exercised domination and control such that PMC can pierce Wausau's corporate veil.

117. PMC and Apogee have an actual controversy regarding whether, because PMC can pierce Wausau's corporate veil, PMC can enforce any judgment against Apogee that it obtains against Wausau in the State Action and/or Pennsylvania Federal Action.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant Apogee:

a. For a declaration that Wausau is the alter ego of Apogee;

b. For a declaration that Wausau's corporate veil can be pierced in order to hold Apogee responsible for Wausau's obligations;

c. For a declaration that because Wausau is the alter ego of Apogee, Plaintiffs can enforce any judgment against Wausau against Apogee;

d. For a declaration that Apogee must pay any incidental and consequential damages as permitted by law;

e. For a declaration that Apogee must pay any interest;

f. For Plaintiffs' attorneys' fees and costs; and

g. For all such relief as this Court deems appropriate.

**JURY TRIAL DEMANDED**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 27, 2026

Respectfully submitted,

**BLANK ROME LLP**

By: *_/s/ Rikke Dierssen-Morice_*
RIKKE DIERSSEN-MORICE (MN # 0237826)
444 West Lake Street, Suite 1650
Chicago, IL 60606
Tel: (312) 776-2541
Rikke.Morice@BlankRome.com

DANIEL E. RHYNHART (*pro hac vice motion forthcoming*)
One Logan Square
Philadelphia, PA 19103-6998
Tel.: (215) 569-5500
Fax: (215) 569-5555
Dan.Rhynhart@BlankRome.com

*Attorneys for Plaintiffs PMC Property Group, Inc., 200 North 16th Street Associates, LP, f/k/a PMC/16th and Race Street Associates, LP, 60 North 23rd Street Associates, LP, f/k/a 2301 JFK Owner LP, and 30 North 23rd Street Associates, LLC, f/k/a 23rd Street Lot B Owner, LLC*